IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-2603-PSF-CBS

EDWARD L. STRISHOCK,

      Plaintiff,

v.

SWIFT & CO.,

      Defendant.
_____

## ORDER ON DEFENDANT'S MOTION TO DISMISS
_____

      This Title VII case comes before the Court on defendant's Motion to Dismiss the plaintiff's complaint, filed January 14, 2005 (Dkt. # 4).  The motion is supported by an Amended Brief filed on January 18, 2005.  Plaintiff filed his response to the motion on February 3, 2005.  Defendant filed its reply brief on February 14, 2005, and supplemental authority in support of the motion on June 2, 2005.  The motion is ripe for determination.  The Court finds that oral argument would not materially assist the Court in its determination.

      On a motion to dismiss this Court must accept as true the facts as pled in plaintiff's complaint.  However, it appears to the Court that in the instant case the facts pertinent to the motion are not substantially in dispute.

## FACTUAL BACKGROUND

      Plaintiff Edward Strishock was an employee of Defendant Swift & Co. from about October 2, 2002 until his termination on November 4, 2003 (Complaint at ¶¶ 8, 35).

On June 1, 2003, which the Court notes was a Sunday and which apparently was plaintiff's birthday, he brought a birthday cake to work to share with his coworkers during the lunch break (Complaint, ¶ 10). During the break, plaintiff's supervisor, Javier Hernandez, entered the room where the employees were having lunch. According to plaintiff, Hernandez "wrestled Strishock to the ground, bound his hands and feet, pulled his pants down, spanked him with his bare hand 35 times, wrote 'Happy Birthday' in black magic marker across his bare buttocks and smeared birthday cake on his face." (Complaint, ¶ 11). Plaintiff also alleges that Hernandez "took a photo of Strishock in that condition," left him lying bound for a period of time during which he told co-workers not to help him or cut him loose or else "that person would be next," and that additional co-workers came into the room and were shown the photo (Complaint, ¶¶ 14-16).

Plaintiff alleges that the "assault" by Heranandez was neither "wanted nor welcomed" and that he felt "violated, humiliated, shocked, stunned, embarrassed, helpless and angry" (Complaint, ¶¶ 12, 18). Plaintiff does not allege that he reported the event to management at any time prior to being fired on August 20, 2003 (Complaint, ¶ 24), but he alleges a coworker "shortly afterward" reported the event to Maintenance Superintendent Vince Snyder, although no precise date of this report is stated (Complaint, ¶ 19).

Plaintiff further alleges that on or about August 17, 2003 he was cited for "an alleged safety violation" by Snyder and Hernandez, and on August 20, 2003, he was terminated for the alleged safety violation (Complaint, ¶¶ 22-23). Apparently, plaintiff's union filed a grievance over his termination (*see* Defendant's Amended Brief in Support

of Motion at 2) and on September 2, 2003 he was reinstated (Complaint, ¶ 29).  Plaintiff

further alleges that shortly before September 26, 2003, an attorney wrote a letter to

the company on plaintiff's behalf about the assault by Hernandez (Complaint, ¶ 30).

On October 7, 2003, Hernandez was terminated by defendant (Complaint, ¶ 31).

Plaintiff alleges that on October 16, 2003 he was cited without cause for poor job

performance, and on October 23, 2003 was again charged with a safety violation, which

he claims was without merit (Complaint, ¶¶ 32, 33).  On or about November 4, 2003,

plaintiff was terminated by defendant.

Plaintiff thereafter filed a charge of employment discrimination with the Equal

Employment Opportunity Commission ("EEOC") and received a notice of right to sue

dated September 17, 2004 (Complaint,  ¶ 6).  Plaintiff filed his complaint on December

17, 2004.

**PLAINTIFF'S COMPLAINT**

The Complaint alleges two claims for relief.  Plaintiff's First Claim for Relief is

titled "Retaliation" and alleges that after plaintiff or his co-worker reported the assault,

plaintiff was subjected to adverse employment actions.

The Second Claim for Relief is headed "Hostile Environment-Ongoing."

It alleges that "[f]rom and after the assault, the attitude of Swift management became

hostile toward Strishock." (Complaint, ¶ 40).  The claim further avers that "[a]fter

Strishock reported the assault to Human Resources, Hernandez asked that Strishock

be reassigned," that other employees including management treated plaintiff with

hostility after Hernandez was terminated – blaming Strishock for his supervisor's

3

termination, and defendant "did nothing to prevent or protect Strishock from said hostility." (Complaint, ¶¶ 40-42). The claim also asserts that the Human Resources Department failed to take prompt, adequate remedial actions after Strishock reported the assault (Complaint, ¶ 44). Plaintiff alleges he suffered emotional distress as a result of the "hostile work environment." (Complaint, ¶ 45).

By way of relief plaintiff requests reinstatement, back pay and lost benefits, compensatory and punitive damages, as well as an order requiring defendant to take effective steps to protect it s employees from the hostile environment and retaliation described in the Complaint, and to take suitable remedial action to implement its "zero tolerance policy toward hostile environment sexual harassment and retaliation." (Complaint, ¶¶ 6-7).

## DEFENDANT'S MOTION

Defendant submits that both claims for relief are subject to dismissal under F.R.Civ.P. 12(b)(6) for failure to state claims upon which relief can be granted. Essentially, defendant argues that plaintiff has failed to plead the elements necessary to establish a *prima facie* case for retaliation under Title VII (Defendant's Amended Brief at 4-9) and has failed to plead the necessary elements of a hostile environment claim based on sexual harassment (Defendant's Amended Brief at 9-10).

## ANALYSIS

For the reasons set forth below, the Court disagrees with defendant as to the alleged retaliation claim and denies the Motion to Dismiss as to the First Claim for

Relief, but agrees that the Second Claim for Relief fails to state the necessary elements of a hostile environment claim under Title VII.

**Plaintiff's Retaliation Claim**

Title VII makes it an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).

In order to establish a *prima facie* case of retaliation, the employee must show (1) he or she engaged in protected opposition to discrimination; (2) the employer took an adverse employment action against him or her; and (3) a causal connection between the protected activity and the adverse action.  *See Dick v. Phone Directories Co.*, 397 F.3d 1256, 1267 (10th Cir. 2005).

As a Tenth Circuit panel recently stated in *Dick, supra*, a case involving alleged same-sex sexual harassment as in the case at bar, a plaintiff may maintain an action for retaliation even though the conduct forming the basis of the underlying complaint was not adjudged to have violated Title VII.  *Id.*  Similarly, in *Crumpacker v. Kansas Dept. of Human Resources,* 338 F.3d 1163 (10th Cir. 2003), *cert. denied,* 540 U.S. 1180 (2004), the panel held that a plaintiff's Title VII retaliation claim may be "based on a reasonable good-faith belief that the underlying conduct violated Title VII" even if the plaintiff's belief of discriminatory conduct is not borne out.  338 F.3d at 1172.  As stated in *Crumpacker*: "This court, however, has held that an *actual violation* is not required to maintain a

5

retaliation claim under Title VII." citing to *Love v. RE/MAX of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984).  338 F.3d at 1171 n.5 (emphasis in original).

The  opinion in *Dick, supra,* 347 F.3d at 1267, also holds that the first prong of the three part test can be met by protected opposition that can range from filing formal charges to voicing informal complaints to superiors.  *Id.*, citing to *Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). Here, although plaintiff did not file a formal charge with the EEOC until after his termination, he does allege that no later than August 20, 2003 he reported the incident involving Hernandez to the company's Human Resource Department, and that sometime before that date a coworker reported the assault "on his behalf."  Without deciding whether the act of a co-worker allegedly taken on behalf of a plaintiff can be deemed protected activity of which he is a beneficiary under Title VII, the Court finds that plaintiff alleges that he engaged in alleged protected activity no later than August 20, 2003.

Defendant concedes that plaintiff has "arguably" pled an adverse employment action, *i.e.* his termination, satisfying the second prong of the three-part test (Defendant's Amended Brief at 6), and the Court agrees.  Whether or not the evidence ultimately shows that plaintiff received the first safety violation citation on August 17, 2003 and was terminated on August 20, 2003 in retaliation for having Hernandez reported by another employee, the actions of the employer could constitute adverse employment actions.  Similarly, whether or not the evidence shows that plaintiff received the citation for poor performance on October 16, 2003,  the second safety violation charge on October 23, 2003, and the termination on November 4, 2003 all

in retaliation for his own reporting of the assault and bringing about Hernandez'
termination, they could also constitute adverse employment actions.  Thus, the second
prong of the three part test is met here.

Finally, defendant argues that plaintiff cannot establish a causal connection
between the protected activity and the adverse employment actions.  Defendant argues
that plaintiff's reliance on the "temporal proximity" to demonstrate a causal connection is
misplaced (Defendant's Amended Brief at 7).  The Court disagrees.

Defendant may be correct that temporal proximity alone may ultimately not
be enough to establish the causal connection if other events explain the adverse
employment action and therefore undermine the causation presumed from mere
temporal connection.  But such a finding cannot be made as a matter of law on a motion
to dismiss.  Here, plaintiff's allegations must be taken as true, as defendant
acknowledges (Defendant's Amended Brief at 1, n.1).  Plaintiff alleges that each of the
above described adverse employment actions were taken "in retaliation" for his
reporting, or causing to be reported, the event of June 1, 2003.  Thus, on the face of the
Complaint plaintiff has sufficiently alleged a claim for violation of  42 U.S.C.
§ 2000e-3(a).

**Plaintiff's Hostile Environment Claim**

In *Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 66 (1986), the Supreme
Court held that a plaintiff may establish a violation of Title VII by proving that
discrimination based on sex has created a hostile or abusive work environment.
The Supreme Court also held that for sexual harassment to be actionable it must

7

be sufficiently severe or pervasive so that it alters the conditions of the victim's employment and creates an abusive working environment.  *Id.* at 67.

However, even assuming the alleged workplace conduct creates an environment that would be found to be hostile and abusive due to sexual harassment, whether the employer is liable under Title VII is a separate question.  In *Meritor*, *supra*, the Supreme Court declined to issue "a definitive rule on employer liability," but did state that it agreed with the EEOC  "that Congress wanted Courts to look to agency principles for guidance in this area."  477 U.S. at 72.  Pointing out that the definition of "employer" in Title VII included any "agent" of an employer, the Court observed that the statute "evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible."  *Id.*  But the Supreme Court rejected the ruling entered by the appellate court in that case that "employers are always automatically liable for sexual harassment by their supervisors."  *Id.*

In *Hirschfeld v. New Mexico Corrections Dept.*, 916 F.2d 572 (10th Cir. 1990), the Tenth Circuit addressed the standard for employer liability in a case in which an employee complained of sexual harassment by a fellow employee.  The court defined employer negligence in the context of hostile work environment sexual harassment as "failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known."  916 F.2d at 577, quoting from *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir. 1989).

In plaintiff's Second Claim for Relief he does not allege that the alleged assault by Hernandez on June 1, 2003 was the result of the employer's failure to remedy or prevent a hostile work environment of which its management had knowledge.  Rather, plaintiff alleges that "[f]rom and after the assault, the attitude of Swift management became hostile toward" him (Complaint at ¶ 40).  The remaining allegations in the Second Claim for Relief all relate to events that occurred after plaintiff reported the assault and the reactions of plaintiff's fellow employees.

As the Tenth Circuit panel stated in *Dick, supra,* coworker hostility or retaliatory harassment may be an adverse employment action for purposes of a retaliation claim if it is sufficiently severe.  397 F.3d at 1269.  The Court has already found that plaintiff has stated a claim for retaliation in violation of Title VII.  But such conduct as alleged in the Second Claim for Relief does not in itself state a claim under Title VII for sexual harassment based on a hostile work environment, even though the incident was caused by a supervisor.  If, as plaintiff alleges, the employer failed to adequately investigate plaintiff's assault charge, or make a timely response, there is no fact-based averment that sexual discrimination of any sort occurred after plaintiff made his report.  There is no suggestion in the complaint that Hernandez's actions on June 1, 2003 could have or should have been anticipated by defendant.  *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998).

Furthermore, although plaintiff alleges that the employer had policies against sexual harassment which it failed to enforce, in the circumstances of this case plaintiff has not alleged sufficient facts to state a claim for sexual harassment.  Because this

9

case involves alleged same-sex harassment, particular pleading requirements must be met.

In *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79-80 (1998), the Supreme Court recognized that same-sex sexual harassment is actionable under Title VII.  However, such harassment violates Title VII only when it is "because of . . . sex." *Id.*  In *Dick, supra,* the Tenth Circuit emphasized that even for same-sex sexual harassment claims, if the nature of an employee's environment, however unpleasant, is not due to his gender, he has not been the victim of sex discrimination as a result of that environment. 397 F.3d at 1263.  "[M]ale-on-male horseplay," for example, is not actionable sexual discrimination unless it is so "severe or pervasive to create an objectively hostile or abusive work environment."  *Id.* at 1266-67.

As the *Dick* opinion further explains, the Supreme Court in *Oncale* provided three scenarios by which a plaintiff alleging same-sex discrimination can establish an inference of discrimination because of gender.  397 F.3d at 1263-64.  The plaintiff can allege the harasser is acting from a homosexual motivation, or that the harasser's conduct is sex-specific reflecting a general hostility to the gender of the plaintiff, or the harasser treats men and women differently in the workplace.  *Id.*

Plaintiff in the instant case provides no allegations consistent with any of these three scenarios outlined in *Oncale*, or in any other manner, to create the inference that the conduct of Hernandez was directed at plaintiff because of his gender.  As defendant suggests, Hernandez' conduct may have been boorish or childish – shockingly so, perhaps, and as plaintiff suggests it may even constitute civil assault.  But there are no

allegations in the Complaint that Hernandez acted in the alleged manner because of plaintiff's gender.  As the Supreme Court stated in *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) citing to *Oncale, supra,* 523 U.S. at 80, the standards for judging alleged claims of sexual hostility must be sufficiently demanding to ensure that Title VII does not become a general civility code for the American workplace.  Those standards are not satisfied here.

Plaintiff's Second Claim for Relief purporting to state a sexually hostile work environment therefore must be dismissed.


**CONCLUSION**

Defendant's Motion to Dismiss (Dkt. # 4) is GRANTED in part and DENIED in part.  Plaintiff's Second Claim for Relief is DISMISSED with prejudice.

DATED:  July 5, 2005

BY THE COURT:

s/ Phillip S. Figa

_____

Phillip S. Figa
United States District Judge

11